[634 NYS2d 731]

In the Matter of WILLIAM L. McCORMICK (Admitted as WIL-LIAM LANGTON McCORMICK), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 4, 1995

### APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Muriel Gennosa* and *Sharon M.J. Commissiong* of counsel), for petitioner.

*Nicholas C. Cooper,* Wayne, Pennsylvania, for respondent.

### OPINION OF THE COURT

Per Curiam.

The respondent was admitted to the practice of law by this Court on October 18, 1972, under the name William Langton McCormick.

The petition contains eight charges of professional misconduct against the respondent. The Special Referee sustained all eight charges to the extent that they were predicated on Code of Professional Responsibility DR 1-102 (A) (4), (5) and (8) (22 NYCRR 1200.3) and DR 9-102 (D) (1), (2) and (8) (22 NYCRR 1200.46). The petitioner moved to confirm the report of the Special Referee. The respondent cross-moves to confirm the report to the extent of those portions of the charges which were not sustained and to disaffirm the report to the extent that the following charges were sustained: unauthorized withdrawals and conversion, in violation of DR 1-102 (A) (4) (Charges Three, Four, Six and Seven); failure to file accounts of incompetents in violation of DR 1-102 (A) (5) (Charges Two, Five and Eight); and engaging in any other conduct adversely reflecting on his fitness to practice law in violation of DR 1-102 (A) (7) (now [8]) (Charges One through Eight).

Charge One alleged that the respondent failed to file annual accountings for the years 1989, 1990, 1991 and 1992 in his capacity as Successor Committee of Goldie Book, an appointment which was made on or about May 19, 1983, by the Supreme Court, Nassau County. In his capacity as Successor Committee, the respondent was obligated, pursuant to articles 77 and 78 of the Mental Hygiene Law, to file an accounting of assets for each year he served, from the date of his appointment to the date of his suspension as Successor Committee, on or about January 27, 1993. By failing to file the required accountings, the respondent is charged with violating DR 1-102 (A) (7) (now [8]).

Charge Two alleged that by order dated January 27, 1993, the Honorable Eli Wager suspended the respondent as Successor Committee and appointed Jeffrey R. Cohn, Esq. to act as guardian ad litem and temporary receiver of the person and property of Goldie Book. That order directed the respondent to prepare and file his final accounting for the period from the date of his appointment as Successor Committee through and including the date of his suspension, within 30 days. The respondent failed to prepare and file the so-ordered final accounting. By reason of the foregoing, the respondent is charged with violating DR 1-102 (A) (5) and (7) (now [8]).

Charge Three alleged that the respondent misappropriated and converted funds entrusted to him as Successor Committee

for the incompetent, Goldie Book. As Successor Committee for Book, the respondent was obligated, pursuant to articles 77 and 78 of the Mental Hygiene Law, to administer all of Book's assets, including bank accounts, for her use and benefit.

By order dated March 31, 1993, the Honorable Eli Wager directed Jeffrey R. Cohn, as guardian ad litem, to take and state the final account of the estate of Goldie Book. That order further directed the respondent to cooperate with Mr. Cohn and to provide him with all of the books, records, and accounts of the Book estate. By notice of motion dated October 15, 1993, Jeffrey R. Cohn filed the final account of the Book estate. The final account recommended that the respondent be surcharged in the amount of $100,669.07.

Pursuant to the final account, the respondent withdrew the following funds from Book Committee accounts:

A. *From Long Island Savings Bank:*

| | |
|---|---|
| 7/05/91 | $3,500 |
| 7/31/91 | 4,681 |
| 8/09/91 | 3,000 |
| 2/28/92 | 3,500 |
| 5/27/92 | 2,500 |
| 8/03/92 | 3,200 |
| 9/18/92 | 3,900 |
| 9/22/92 | 3,000 |
| 11/03/92 | 3,400 |
| 11/19/92 | 3,000 |

B. *From Bank of Smithtown:*

| | |
|---|---|
| 8/08/91 | $2,500 |
| 8/09/91 | 3,000 |
| 9/30/91 | 3,600 |

C. *From Manufacturers Hanover:*

| | |
|---|---|
| 7/01/91 | $6,629 |
| 1/13/92 | 4,000 |
| 2/27/92 | 2,500 |
| 7/01/92 | 2,000 |

D. *National Westminster Bank:*

| | |
|---|---|
| 4/01/92 | $1,400 |
| 6/29/92 | 500 |
| 11/30/92 | 1,400 |

The respondent failed to demonstrate that the aforesaid withdrawals were for the use and benefit of the incompetent or that they were authorized or ratified by the court.

By interim order dated November 10, 1993, the Honorable Frank S. Rossetti directed that the respondent be removed as Successor Committee for the person and property of Goldie Book. That order afforded the respondent the opportunity to rebut the surcharge and directed that he submit detailed documentation, on or before November 26, 1993, concerning all unauthorized expenditures set forth in the final account.

By order and judgment (one paper) dated January 20, 1994, the Honorable Frank S. Rossetti confirmed the report and settled the final account. The respondent was surcharged and directed to pay Jeffrey R. Cohn, as guardian ad litem of Goldie Book, the sum of $100,669.07 within 10 days of service of the order. As evidenced by the January 24, 1994 order imposing the surcharge, *all* unauthorized withdrawals indicated in the final account for the years 1991 and 1992 were confirmed.

On appeal, this Court, by order dated October 10, 1995 (*Matter of McCormick [Cohn]*, 220 AD2d 506) deleted the provisions of Justice Rossetti's order which surcharged the respondent with the amounts he paid for legal and expert witness fees and substituted therefor a provision allowing those expenditures, deleted the provision which surcharged him for appraisal fees, and remitted the matter for a hearing on the issue of whether the respondent should be surcharged with the amounts he paid for appraisal fees. As so modified, the order and judgment was affirmed. This Court specifically found that the respondent had been properly surcharged with the unexplained withdrawals from Book's bank account and for the amounts he had taken as advances in commissions.

A so-ordered stipulation of settlement, dated February 16, 1994, provided for the payment of $57,000 by the surety of Jeffrey R. Cohn, as guardian ad litem of Book, in exchange for a release of the surety from any and all liability in connection with William L. McCormick under Committee bond number 2597882. By reason of the foregoing, the respondent is charged with violating DR 1-102 (A) (4) and (7) (now [8]).

Charge Four alleged that the respondent misappropriated and converted funds entrusted to him as Successor Committee for the incompetent, David G. Radtke. The respondent was appointed by the Supreme Court, Suffolk County, on or about August 10, 1978, as Successor Committee for the incompetent

veteran, David G. Radtke. In his capacity as Committee, the respondent was obligated, pursuant to articles 77 through 79 of the Mental Hygiene Law, to file an annual accounting of the Radtke assets for each year that he served as Committee and to administer all of Radtke's assets, including bank accounts, for the use and benefit of Radtke from the date of his appointment to the date of his suspension as Successor Committee, on or about January 26, 1993.

By memorandum dated March 31, 1992, the District Counsel of the Department of Veterans Affairs, M. D. Shemtob, advised the court that his office had not received any copies of the respondent's annual accountings for the periods 1989-1990 and 1990-1991.

By letters dated April 21 and June 23, 1992, Benjamin Russo, as Referee for the Radtke estate, sought annual accountings from the respondent for those periods. By letter dated December 18, 1992, Key Bank Vice President William Diekroger advised the court that within the previous several months, the Radtke Committee account balance for account number 30251012032 had fallen from approximately $90,000 to approximately $9,000. A court conference was held in *Matter of the Examination of the Annual Inventory and Account of William L. McCormick, Successor of the Estate of David Radtke,* on January 26, 1993, before Justice Luciano. In addition to the respondent, Benjamin Russo and Dennis Kops were present at the conference.

On January 26, 1993, Justice Luciano immediately suspended the respondent as Successor Committee with respect to all matters on which he served within the Supreme Court, Suffolk County, including the Radtke matter. That order directed Benjamin Russo, Esq., as Referee, and Dennis Kops, Esq., as Russo's assistant, to prepare a final account for the Radtke estate.

By notice of motion dated May 6, 1993, Benjamin Russo as Referee filed the final account of the estate of David G. Radtke with the Supreme Court, Suffolk County. The respondent filed no objections to the account. In accordance with the final account, the respondent, as Successor Committee, was responsible for administering approximately 11 various savings, investments, and checking accounts.

The final account revealed that between 1990 and 1992, the respondent caused the Radtke Committee account to be debited on many occasions and made numerous withdrawals and disbursements from many of the Radtke Committee accounts as follows:

A. *GOLDOME account number 000047701044971*

–Investment account

–On 11/11/89, three days before the account maturity date, the respondent withdrew $104,517.98.

–Approximately three months elapsed before the respondent deposited $106,640.17 ($104,517.98 + $2,122.19 = $106,640.17) into a Radtke Manufacturers Hanover Committee account number 917-6234930.

B. *KEY BANK account number 30251012032*

–Money market account

–Between 9/11/92 and 12/22/92, the respondent withdrew in excess of $68,500.

| | | |
|---|---|---|
| 9/21/92 | — | $30,000 |
| 10/22/92 | — | $10,000 |
| 10/30/92 | — | $9,500 |
| 11/09/92 | — | $7,500 |
| 11/13/92 | — | $5,500 |
| 11/30/92 | — | $5,000 |
| 12/22/92 | — | $505 |

–Between 11/24/92 and 12/1/92, the respondent caused in excess of $14,500 to be debited from the above account by cashing personal checks against the Committee account which subsequently bounced:

| | | |
|---|---|---|
| 11/24/92 | — | $3,505 |
| 11/25/92 | — | $3,800 |
| 11/30/92 | — | $3,605 |
| 12/01/92 | — | $3,605 |

–Between 11/92 and 12/92, the respondent cashed the following personal checks against the Radtke Key Bank Committee account:

| | | |
|---|---|---|
| 11/10/92 | — | $3,500<br>The respondent's personal check made payable to the respondent. |
| 11/16/92 | — | $3,500<br>Check from Elm Grove Shores Realty made payable to the respondent. |

| 11/19/92 | — | $3,600<br>Check from Elm Grove Shores Realty made payable to the respondent. |
| 11/23/92 | — | $3,600<br>Check from Elm Grove Shores Realty made payable to the respondent. |
| 12/10/92 | — | $500<br>The respondent's personal check made payable to the respondent. |

C. *MANUFACTURERS HANOVER TRUST account number 3917 6234930 1*

–Power savings account

–On 2/14/90, the respondent withdrew $25,000.

–On 3/30/90, one and one-half months later, the respondent deposited $25,000 into National Westminster Radtke Committee account 2-218-21009-3.

D. *NATIONAL WESTMINSTER account number 2-218-21009-3*

–Money market savings

–Between 7/31/90 and 12/31/91, the respondent caused approximately $32,000 to be debited from this account, in each instance by cashing a personal check against same Committee account which subsequently bounced:

| 7/31/90 | — | $2,500 |
| 8/10/90 | — | $2,500 |
| 8/12/91 | — | $1,900 |
| 8/28/91 | — | $2,000 |
| 10/16/91 | — | $2,900 |
| 12/6/91 | — | $2,350 |
| 12/6/91 | — | $4,000 |
| 12/9/91 | — | $2,000 |
| 12/9/91 | — | $4,000 |
| 12/10/91 | — | $3,800 |
| 12/12/91 | — | $4,000 |

–Between 5/20/91 and 10/27/92, the respondent withdrew approximately $45,000 from this Committee account.

| 6/3/91 | — | $40,000<br>On 6/17/91, 14 days following the above withdrawal, the respondent deposited $40,000 into the Radtke Greenpoint Committee account. |
| 6/9/92 | — | $3,000 |
| 10/27/92 | — | $2,100 |

The respondent failed to demonstrate that the transactions outlined above were for the use and benefit of the incompetent, David Radtke, or that those transactions were authorized or ratified by the court. The respondent failed to explain the lapses between the referenced withdrawals and subsequent deposits into other Committee accounts. In instances where there were no subsequent deposits of previously withdrawn funds, the respondent failed to explain or account for the monies. At the time of the filing of the motion for judicial settlement, there were monies still outstanding from the respondent pertaining to the Radtke estate.

By check number 1827, dated April 12, 1993, and drawn on the trust account of the respondent's criminal law attorney, Paul Gianelli, the respondent paid Harvey Besunder, as guardian ad litem/temporary receiver of Radtke, a sum of $90,000 to be applied to the Radtke estate.

Notwithstanding the respondent having been suspended by Justice Luciano on or about January 26, 1993, on all estate matters on which he served in Suffolk County, Harvey Besunder was advised by Paul A. Michels of the law firm of Cullen & Dykman, by letter dated March 10, 1993, that the respondent had cashed a check in the amount of $1,850 drawn on National Westminster Bank, USA, against account number 18-45-580-8 (William L. McCormick, Committee of the Person and Property of David G. Radtke).

Based on the foregoing, the respondent violated DR 1-102 (A) (4) and (7) (now [8]).

Charge Five alleged that the respondent failed to timely file Radtke annual accounts for 1989/1990 and 1990/1991. The respondent filed 1989/1990 and 1990/1991 annual accounts on or about December 31, 1992, only after repeated requests by Benjamin Russo, the Referee. The 1989/1990 and 1990/1991

accountings filed by the respondent failed to account for the transactions, withdrawals, and debits outlined in Charge Four. Based on the foregoing, the respondent is charged with violating DR 1-102 (A) (5) and (7) (now [8]).

Charge Six alleged that the respondent misappropriated and converted funds entrusted to him as conservator for the estate of Julia Bergman. As conservator, the respondent was obligated, pursuant to articles 77 and 78 of the Mental Hygiene Law, to file an annual accounting of the Bergman assets for each year he served as conservator and to administer all of Bergman's assets, including bank accounts, for the use and benefit of Bergman, from the date of his appointment to the date of his suspension as conservator. The respondent was suspended as conservator of the estate of Julia Bergman pursuant to a court conference held on January 26, 1993, before the Honorable Daniel Luciano. By order dated January 28, 1993, Justice Luciano appointed Benjamin Russo as Referee to prepare a final accounting of the estate of Julia Bergman.

By notice of motion dated January 20, 1994, Benjamin Russo filed the final account of the estate of Julia Bergman. The final account revealed that the respondent misappropriated funds entrusted to him as conservator for the estate of Julia Bergman. The respondent reimbursed himself twice, in the amount of $2,125, for the same expense for monies expended by him on behalf of Julia Bergman. Specifically, the respondent reimbursed himself $2,125 in 1986 and the sums of $1,000 and $1,125, respectively, in 1987 and 1991 for the same expenditure. The respondent made a $1,500 cash withdrawal in 1991 from a Bergman conservatee Committee money market account. On or about January 21, 1992, a check in the sum of $18,873.87 was forwarded to the respondent by Charles Schwab, resulting from the sale of the conservatee's AT&T shares. That check was never deposited into the conservatee's account. In 1993, the respondent withdrew $2,500 in cash from a Bergman conservatee money market account.

The respondent failed to show that the aforesaid conduct was authorized or ratified by the court or was for the use and benefit of the conservatee. Based on the foregoing, the respondent is charged with violating DR 1-104 (A) (4) and (7) (now [8]).

Charge Seven alleged that the respondent misappropriated and converted funds entrusted to him as conservator for the incompetent, Betty Bernard. The respondent was appointed as conservator by the Supreme Court, Suffolk County, on or about

March 3, 1986. As conservator, the respondent was obligated, pursuant to articles 77 and 78 of the Mental Hygiene Law, to administer all of Bernard's assets, including bank accounts for Bernard's use and benefit from the date of his appointment to the date of his suspension on January 26, 1993.

Betty Bernard passed away in 1990. By order dated January 28, 1993, the Honorable Daniel Luciano appointed the Honorable Leon Lazer as Referee and William Wexler as temporary receiver to render a final account of the estate from the time of his appointment to the date of his suspension on January 26, 1993.

Justice Lazer filed his final account of the estate with the Supreme Court, Suffolk County, by notice of motion dated May 13, 1993. In accordance with the final account, the respondent, as conservator, was responsible for administering many various savings, checking, and investment accounts. The final account revealed that between 1990 and 1993, the respondent conducted numerous transactions and made numerous withdrawals and disbursements from many of the Bernard conservatee accounts.

A. *From Marine Midland account number 921-457589-6*

| | |
|---|---|
| 7/13/90 | $2,500 bounced check |
| 8/02/90 | $1,200 bounced check |
| 9/30/92 | $2,200 debit resulting from a bounced check |
| 10/30/92 | $1,400 debit resulting from a bounced check |
| 11/25/92 | $2,300 debit resulting from a bounced check |

B. *From National Westminster account number 2-218-22322-2*

| | |
|---|---|
| 8/18/90 | $8,000 check written to respondent |
| 3/17/92 | $3,500 withdrawn |
| 3/02/93 | $17,632.90 withdrawn |

*account number 2-218-212219*

| | |
|---|---|
| 3/27/92 | $1,000 check written to respondent |

C. *Norstar account number 02810912641*

| | |
|---|---|
| 1/13/90 | $25,000 withdrawn |

D. *Manufacturers Hanover Trust account number*
   *917-6402527*

| | |
|---|---|
| 8/01/90 | $25,000 withdrawn |
| 3/20/92 | $15,000 withdrawn |
| 3/23/92 | $11,461.08 withdrawn |

The respondent's time-deposit account at Manufacturers Hanover Trust was closed on June 21, 1991, at which time the balance was $104,559.03. On that day, the respondent opened two accounts at Manufacturers Hanover Trust, a savings account in which he deposited $69,558.03 and a checking account in which he deposited $1. He did not deposit the remaining $35,000 into a Bernard conservatee account.

The respondent failed to demonstrate that the aforesaid transactions, withdrawals, and debits were for the use and benefit of the conservatee, Betty Bernard, or that they were authorized or ratified by the court.

On March 5, 1993, William Wexler received a check from the respondent drawn on the Bernard National Westminster conservatee account in the amount of $30,000, payable to William Wexler, as temporary receiver. On March 5, 1993, Wexler deposited that check into a newly established Bernard Chemical Bank account. On or about March 10, Chemical Bank informed Wexler that the check had been returned by National Westminster Bank for insufficient funds.

By notice dated March 18, 1993, William Wexler rendered an accounting to Referee Lazer pertaining to the assets received from the respondent relative to the Bernard estate. The accounting indicated that the respondent had transferred zero assets to the receiver upon the receiver's appointment on or about January 28, 1993.

Based on the foregoing, the respondent is charged with violating DR 1-102 (A) (4) and (7) (now [8]).

Charge Eight alleged that the respondent failed to maintain required bookkeeping records as conservator of Betty Bernard, which specifically identified dates, sources, and descriptions of items deposited, dates, purpose, and payee of each withdrawal and disbursement; and all checkbooks, checkstubs, bank statements, prenumbered cancelled checks, and duplicate deposit slips. The respondent also failed to maintain a ledger book or similar record and to accurately record receipts and disbursements therein at or near the time of the act, condition, or event recorded.

In an affidavit annexed to his final account, Referee Lazer advised the court that the respondent failed to fulfill his obligation to turn over to the Referee complete bank records and documentation pertaining to the estate of Betty Bernard from the time of his appointment to the time of his suspension.

Based on the aforesaid conduct, the respondent is charged with violating DR 1-102 (A) (5) and (7) (now [8]) and DR 9-102 (D) (1), (2) and (8).

Upon review of the evidence adduced and the uncontroverted facts, we conclude that the Special Referee properly sustained the charges to the extent indicated. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted. The respondent's cross motion is granted to the extent that the respondent was found not to have served as counsel to the wards, with the result that certain Disciplinary Rules charged could not have been violated. The respondent's cross motion is otherwise denied.

In determining an appropriate measure of discipline to impose, we have taken into consideration the absence of any prior disciplinary history and the respondent's argument that none of the charges alleged misconduct by him in his capacity as an attorney. The extent of the respondent's larcenies nevertheless warrants his disbarment.

BRACKEN, J. P., SULLIVAN, BALLETTA, ROSENBLATT and MILLER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the branch of the respondent's cross motion which is to disaffirm stated portions of the report is granted solely to the extent that no violations premised on the allegation that the respondent served as counsel to the wards were sustained; and it is further,

Ordered that the cross motion is otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, William L. McCormick, is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, William L. McCormick is commanded to desist and

refrain (1) from practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.